UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK HEINONEN, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-00459 (VLB) |
| v. | : | |
| | : | |
| CRAMER & ANDERSON LLP, | : | |
|     Defendant. | : | DECEMBER 20, 2013 |

<u>MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS
COMPLAINT [Dkt. #15]; DENYING PLAINTIFF'S MOTION TO SUPPLEMENT
COMPLAINT [Dkt. #22]</u>

I.    <u>Introduction</u>

The pro se Plaintiff, Mark Heinonen ("Heinonen"), brings this action against Defendant law firm Cramer & Anderson, along with John Tower and Scott McCarthy, two of the firm's attorneys, alleging various claims related to Mr. Heinonen's eviction from and sale of the property in which he lived.[1]  Cramer & Anderson has moved to dismiss the Plaintiff's claims on four grounds: first, this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); second, the Plaintiff has failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6); third, this action is barred by the Rooker-Feldman doctrine; and fourth, the action is barred by res judicata as Plaintiff has previously litigated his claims in state court.  For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

---

[1] While the case caption reflects that the Defendant in this action is the law firm Cramer & Anderson, the Plaintiff also makes allegations against two partners of the firm.  The Court will consider this motion with reference to all three Defendants against whom Plaintiff makes allegations.

## II.   Factual Background

The following facts and allegations are taken from Plaintiff's *pro se* complaint.  Plaintiff, a long-time resident of Connecticut, was a specific devisee of real property located at 138 Route 37, South Sherman, Connecticut (the "Property"), bequeathed to him by his mother, Barbara Heinonen Scott, upon her death on December 1, 2006.  [Dkt. #1, Compl. at ¶¶ 1, 3].  Plaintiff alleges in his first count that the Defendants, hired by his sister-in-law, a non-party to Barbara Heinonen Scott's estate (the "Estate"), on February 14, 2008 "sent a State of Connecticut Marshal to Plaintiffs [sic] home and served a fraudulent, harassing and threatening, 'NOTICE TO QUIT OCUPANCY' [sic] document," which declared that the Plaintiff had violated a landlord tenant agreement that Plaintiff alleges did not exist.  [*Id.* at ¶ 4].  Plaintiff asserts that Defendants argued for sale of the Property to satisfy debts of the Estate, but such debt was manufactured by the Defendants.  [*Id.* at ¶ 12].  Plaintiff contends that Defendants' claim that he no longer had the right to occupy the Property is contradictory to Connecticut statutes, that Defendants owe Barbara Heinonen Scott's beneficiaries "a duty to protect and preserve the property," that they have "wasted the estate" and "harassed, robbed and assaulted Plaintiff," that the Defendants were never retained by the Estate's executor, Arthur Scott, and that "Defendant deceived The Judges of the Appellate Court with slanderous, unfounded allegations" that the decedent's Estate was insolvent and that Heinonen had failed to pay property taxes or maintain home owners insurance.  [*Id.* at ¶¶ 5, 6, 11].  He also "suggests

that The Probate Court lacks jurisdiction to bring an eviction upon anyone." [*Id.* at ¶ 10].

Count two alleges that on January 3, 2011 the Defendants "had a Superior Court Clerk sign an illegal 'Execution of Eviction' notice," and Plaintiff and his three minor children had only three days to evacuate the Property. [*Id.* at ¶ 13]. Plaintiff also contends that the Defendants "ignored the 'Rules of Summary Process'" when they provided only three days for him to vacate the property instead of the requisite five, and that they ignored Plaintiff's basic human rights and defied Connecticut statutes. [*Id.* at ¶¶ 13, 14].

In count three, Plaintiff asserts that he was illegally evicted on January 6, 2011, after which the Defendants wasted the Estate and the Property deteriorated while unoccupied and unmaintained. [*Id.* at ¶ 15]. On November 15, 2011 "the Defendants encouraged the executor [of the Estate], Arthur Scott to sign a 'Contract of Sale' of Plaintiff's property," before a probate judge had authorized a sale. [*Id.* at ¶ 16]. He claims that his Property was "illegally sold and [is] being illegally occupied, due to the Defendants [sic] disregard to Law, pursuant to the sale of property and rules of the court." [*Id.* at ¶ 18]. Plaintiff notes that he "is appealing the Probate Courts [sic] December 2011 erroneous authorization to 'Sell or Mortgage Real Property.'" [*Id.* at ¶ 17].

Plaintiff's fourth count alleges false arrest. On January 11, 2013, "Plaintiff called several media outlets to verify his invitations to witness a summary judgment hearing scheduled for January 14th, 2013" at which the Plaintiff

"intended to prove that the Defendants have been misrepresenting Arthur Scott and was seeking public support to encourage the presiding Judge to respond appropriately."  [*Id.* at ¶ 20].  Then, "[a] telephone receptionist from WFSB Channel 3 News responded by calling the Court and mentioned that the Plaintiff had made a reference to the Sandy Hook massacre."  [*Id.* at ¶ 21].  Plaintiff's complaint further explains that "Plaintiff's reference to the Sandy Hook massacre was a statement that suggested that the courts should show consideration and concern to litigate [sic] who suffer with mental illness."  [*Id.*].  He further notes "[f]or seven years Plaintiff has complained to the courts, that condoning defendant's blatant dishonesty, false representation, unauthorized practice of law and fraud has caused Plaintiff to suffer undue seizures."  [*Id.*].

He alleges that Defendants "heard about Plaintiffs [sic] invitation to the News media and retaliated by concocting bazaar [sic] allegations that Plaintiff was somehow threatening the court" and so sent Connecticut State Police to his residence.  [*Id.* at ¶ 22].  The Troopers, he asserts, then "questioned Plaintiff about his conversation with the phone receptionist for Channel 3 News," took his statement, and "departed assured that the Plaintiff was not threatening and allegations that the Defendant made that 'Plaintiff threatened the Court' were without merit."  [*Id.* at ¶ 23].

"Defendants were disappointed with the State Troopers conclusion" and so they "had a judge conspire to arrest Plaintiff, based on Defendants [sic] fabricated, nonsense allegation, and held without bond on erroneous 1st Degree Threatening charges."  Seven weeks later he was released on a promise to

4

appear.  [*Id*. at ¶24].  In so doing, the Defendants "succeeded in disabling [Plaintiff] from submitting two 'Briefs' due in the Appellate Court in February 2013."  [*Id*. at ¶ 25].

Plaintiff's prayer for relief contains further allegations and requests varied relief from this Court.  Plaintiff first requests that this Court "reprimand" the Defendants for their "dishonesty and attack on a disabled citizen, his deceased mother and her beloved grandchildren," as "they had no right to pursue an eviction, fraudulently declaring to represent the executor of the estate."  [Dkt. # 1, Compl. at p. 7, ¶ 1].  He also alleges, among other things, that the "Defendants forced homelessness on a disabled citizen and three minor children without reason" by evicting him, which defies the Fourteenth Amendment to the Constitution.  [*Id*. at ¶ 2].  As the Defendants' "illegal and immoral proceeding" caused irreparable injury, Plaintiff requests disbarment of the Defendants.  [*Id*.].  Plaintiff next asserts that "Defendants conspired with The Judge of the probate court, a confused realtor [ ], and an inscrutable Banking Institution, and illegally sold plaintiffs [sic] property behind his back," and contends that the "Defendants harmful error, selling someone else's property without their permission, and when an appeal from The Probate Courts [sic] illogical authorization 'To Sell or Mortgage Real Property', is pending in Superior Court, is a mistake that needs correction."  [Dkt. # 1, Compl. at p. 8, ¶ 3].  As to Plaintiff's fourth count for false arrest, he "moves the court to acknowledge Defendants [sic] irrational and illegal actions" as, "[w]hile Plaintiff was unjustly incarcerated, 16 million dollars,

5

requested restitution for Professional Malpractice, was dismissed by the Appellate Court" and other of Plaintiff's lawsuits were "derailed."  [*Id*. at ¶ 4].

### III.   Standard of Review

"'To survive a motion to dismiss [for failure to state a claim upon which relief may be granted], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556

U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Halebian v. Berv*, 644 F.3d 122, 131 n. 7 (2d Cir. 2011); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

Unlike the Connecticut Superior Court, which is a court of general jurisdiction, federal courts are courts of limited jurisdiction and may not hear claims over which they have no subject matter jurisdiction.  *Mims v. Arrow Fin. Servs, LLC*, 132 S. Ct. 740, 747 (2012); U.S. Const. art. III, § 2*; see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute").  Lack of subject matter jurisdiction may be raised at any time by a party or by the court

sua sponte.  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.  Subject-matter jurisdiction can never be waived or forfeited.") (internal citations omitted); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) ("Courts do not usually raise claims or arguments on their own.  But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n. 4 (2d Cir. 2007).  *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings"); *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (holding same).  Further, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Finally, the Court notes that the Paintiff brings this action *pro se*.  It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest."  *Jabbar v. Fischer*, 683 F.3d 54, 56 (2d Cir. 2012) (quotation marks, alterations, and citation

**8**

omitted); *see also Toliver v. City of New York*, 530 F. App'x 90, 91 (2d Cir. 2013); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006); *Sharpe v. Conole,* 386 F.3d 482, 484 (2d Cir. 2004); *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir. 2003); *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and quotation omitted).  "This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks and citation omitted).

IV.   **Discussion**

    a.   **Subject Matter Jurisdiction: Rooker-Feldman Doctrine**

The Defendants argue that the Court should dismiss Plaintiff's complaint pursuant to the Rooker-Feldman doctrine because Plaintiff is asking the Court to review and/or reverse final judgments rendered by various state courts prior to the filing of this action.

"United States District Courts lack subject matter jurisdiction under the Rooker–Feldman doctrine over claims that effectively challenge state court judgments." *Russo v. GMAC Mortgage, LLC*, 13-1475, --- F. App'x ---, 2013 WL

6332551, at * (2d Cir. Dec. 6, 2013).  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (noting that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors").  A federal court must abstain from considering claims pursuant to the Rooker-Feldman doctrine where "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced."  *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).  District courts lack jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."  *Feldman*, 460 U.S. at 486; *Russo*, 2013 WL 6332551, at *1 (same); *Jordan v. Levine*, 12-3339, --- F. App'x ---, 2013 WL 5788643, at *1 (2d Cir. Oct. 29, 2013) (same).  The United States Supreme Court is the only federal court that has jurisdiction to review state court decisions.  *See Feldman*, 460 U.S. at 486 ("Review of [state court] decisions may be had only in this Court."); *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) (pursuant to the Rooker-Feldman doctrine, "among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments").

Here, the Court lacks jurisdiction pursuant to the Rooker-Feldman doctrine to hear Plaintiff's first, second, and third counts, each dealing with decisions rendered in state court.  First, as the Plaintiff has explicitly recognized in his complaint, he has lost in state court on several occasions and, indeed, the facts underlying the present action have a long and torturous history in state court dating back to 2008.  Arthur Scott, the executor of the Estate of Barbara Heinonen Scott (and Mrs. Scott's husband), brought a summary process action against Mark Heinonen in 2008, seeking to evict Heinonen from the home that the decedent had owned before her death and which had been devised to Mr. Heinonen (and which is the Property at issue in the present federal action).  The probate court authorized the executor to market the home for sale to satisfy the financial obligations of the Estate.  The Superior Court, Judicial District of Danbury, Geographical Area No. 3, entered judgment of possession in favor of Heinonen.  *See Scott v. Heinonen*, 118 Conn. App. 577 (2009).  On December 29, 2009, the Connecticut Appellate Court reversed and remanded the lower court's decision, holding that Heinonen did not hold title to the property specifically devised to him by his deceased mother at the time the executor of the Estate served upon him a Notice to Quit the property by February 20, 2008.  Rather, the court held that the Estate itself held proper legal title to the property, entitling Scott to serve the Notice to Quit on the Plaintiff and to evict him.  *Scott v. Heinonen*, 118 Conn. App. 577, 581-82 (2009).  In so holding, the Appellate Court recognized that "[o]ur legislature has granted the Probate Court the power to authorize the sale of specifically devised property to satisfy the debts of an

estate.  Common sense dictates that inherent in such an order is a right to immediate possession and control of such property by the administrator of the estate to make the property marketable." *Id.* at 584.  The court concluded that Arthur Scott, as executor of the Estate, was entitled to summary process as a matter of law. *Id.* at 589.  On February 25, 2010 the Connecticut Supreme Court denied Heinonen's petition for certiorari. *Scott v. Heinonen*, 295 Conn. 909 (Feb. 25, 2010).

Heinonen subsequently lost in a second superior court summary process action mirroring the first.  On October 12, 2010, the Connecticut Appellate Court dismissed his appeal, declining to write a direct opinion on this appeal and instead citing directly to its prior decision in the first summary process action, *Scott v. Heinonen*, 118 Conn. App. 577, 581-82 (2009), *cert. denied*, 295 Conn. 909 (2010).  The Connecticut Supreme Court denied Heinonen's appeal of the Appellate Court's October 12, 2010 summary dismissal. *Scott v. Heinonen*, 299 Conn. 913 (Nov. 16, 2010).  The U.S. Supreme Court then denied Heinonen's petition for writ of certiorari and subsequently denied his petition for a rehearing. *Heinonen v. Scott*, 131 S. Ct. 2905 (May 23, 2011), *rehearing denied* 132 S. Ct. 59 (Aug. 15, 2011).

The Plaintiff has filed and lost various other actions in state court related to the facts alleged in this action.  On January 24, 2011, Plaintiff commenced a *pro se* action on behalf of himself and his minor children in Danbury Superior Court against Attorney John Tower of Cramer & Anderson in which he alleged various counts including fraud, assault of a disabled citizen, "disrespect to Superior

Court order," grand larceny, and "loss of enjoyment of life."  Heinonen's allegations stemmed from Tower's representation of executor Arthur Scott in prior actions in which Heinonen was a defendant, including the two summary process actions noted previously which resulted in Connecticut Appellate Court decisions in the Estate's favor.  The superior court granted Tower's motion for summary judgment on June 24, 2011, concluding that Tower was not liable to Heinonen relating to his representation of executor Arthur Scott, as Tower "owed no duty to either Heinonen or his children."  *Heinonen v. Tower*, No. DBDCV115008889S (Conn. Super. Ct. Jun. 24, 2011) (docket entry number 115.00), *available at* http://civilinquiry.jud.ct.gov/GetDocket.aspx.

Heinonen filed a second action in Danbury Superior Court on December 7, 2011 against John Tower and Scott McCarthy, both defendants in the present action.  Heinonen alleged five counts: (1) the defendants committed "legal malpractice" in the initiation of legal proceedings against Heinonen which resulted in his eviction from his home, which previously belonged to his mother; (2) the defendants "wasted the money" which he was ordered in a prior proceeding to pay on a monthly basis for the benefit of his mother's Estate; (3) the defendants committed defamation relating to two allegedly "illegal eviction actions" as well as to the Appellate Court's decision, *Scott v. Heinonen*, 118 Conn. App. 577 (2009); (4) the defendants violated Heinonen's due process rights in relation to various proceedings and hearings in which they caused "many erroneous court decisions," have "tricked the courts," "made up harmful and hurtful misinformation," and caused him "anxiety and physical harm;" and (5) the

defendants' caused Heinonen "loss of enjoyment of life." *Heinonen v. McCarthy*, No. CV 115009005S, 2012 WL 4040336, at *1 (Conn. Super. Ct. Aug. 21, 2012).  The Connecticut Superior Court granted summary judgment in favor of the defendants and against Heinonen on all five counts, noting of his due process claim that "Plaintiff has failed to identify any legal authority which establishes a right of action for due process violations in other pending or prior litigation." *Id.* at *3.  The court also granted summary judgment on the basis of res judicata, concluding that "the underlying factual claims and allegations in the [DBDCV115008889S superior court action] appear to be exactly the same claims" asserted in the later action, which shared an identical nucleus of common fact with the earlier action. *Id.* at *4-5.   Finally, the court made a special finding pursuant to Conn. Gen. Stat. § 52-226a that Heinonen's action was without merit and not in good faith. *Id.* at *6.

Each of the foregoing state court judgments was entered before the commencement of this federal action on April 8, 2013.

Plaintiff's first, second, and third causes of action are plainly barred by the Rooker-Feldman doctrine.  In this action, Plaintiff alleges in his first count that the Defendant's February 14, 2008 Notice to Quit Occupancy was "fraudulent, harassing and threatening," that Plaintiff was entitled to occupy the property at that time, that Plaintiff was illegally evicted, that the "Probate Court lacks jurisdiction to bring an eviction upon anyone," that the probate court's order to market the property should have been dismissed, and that Cramer & Anderson had no right to represent the Estate.  [Dkt. #1, Compl. ¶¶ 4, 5, 7, 10, 12].  Count

**14**

two alleges that on January 3, 2011 the Defendants "had a Superior Court Clerk sign an illegal 'Execution of Eviction' notice," and that the Defendants "ignored the 'Rules of Summary Process'" when they provided only three days for him to vacate the property instead of the requisite five. [*Id.* at ¶¶ 13, 14]. Finally, count three alleges that the property was illegally sold after Plaintiff's eviction and that the Defendants have since "wasted the estate." [*Id.* at ¶¶ 15-19]. In his prayer for relief, Heinonen further alleges that Cramer & Anderson had no right to pursue an eviction as it did not represent the executor of his mother's Estate. [*Id.* at p. 7 ¶ 1]. He also contends that "Defendants conspired with The Judge of the probate court, a confused realtor [ ], and an inscrutable Banking Institution, and illegally sold plaintiffs [sic] property behind his back," and proclaims that the "Defendants harmful error, selling someone else's property without their permission, and when an appeal from The Probate Courts [sic] illogical authorization 'To Sell or Mortgage Real Property', is pending in Superior Court, is a mistake that needs correction." [Dkt. # 1, Compl. at p. 8, ¶ 3]. As a result of these violations, Plaintiff alleges that the Defendants have forced homelessness on him and his children without reason as a result of illegal eviction and sale of the Property.

It is clear on the face of the Plaintiff's complaint that he seeks review of prior Connecticut state court decisions which allowed his mother's Estate to evict him, take possession of the Property belonging to the Estate, and sell the Property to pay the debts of the Estate. Each of Plaintiff's first three causes of action specifically rely on actions taken pursuant to state court decisions. Indeed, Plaintiff explicitly seeks review of the various state court decisions by

this Court:  in his prayer for relief, Heinonen asserts that "The Defendants [sic] harmful error, selling someone else's property without their permission, and when an appeal from the The Probate Courts [sic] illogical authorization, 'To Sell or Mortgage Real Property', is pending in Superior Court, is a mistake that needs correction." [*Id*. at p.8 ¶ 3].  He also claims that the Defendant's contention that he no longer had a right to occupy the property – a conclusion reached by the Connecticut Appellate Court on two separate occasions – "is contradictory to the CT STAT of law." [Dkt. #1, Compl. ¶ 5].  Elsewhere, Plaintiff claims that "The Probate Court lacks jurisdiction to bring an eviction upon anyone," an assertion refuted by the Connecticut Appellate Court, and that the probate court's December 2011 authorization for sale of the property was "erroneous." [*Id*. at ¶10].  In sum, the Plaintiff is essentially attempting to appeal prior state court judgments in federal district court, which may not hear such appeals.  It would be impossible for this Court to pass judgment on Plaintiff's first three claims without engaging in direct review of judgments rendered by the Connecticut state courts, and the Court could not rule in Plaintiff's favor without effectively reversing or contradicting those final state court judgments.  Such a review is not permissible under Rooker-Feldman.  This Court does not have jurisdiction over Plaintiff's counts one, two, or three, and those counts must be DISMISSED.

### b.  Count 4: Failure to State a Claim and Lack of Jurisdiction

The Defendant argues that dismissal of the Plaintiff's complaint is necessary pursuant to Rules 12(b)(1) and 12(b)(6) because the Plaintiff has failed to allege that the Defendant acted under color of state law such that Cramer &

**16**

Anderson may be held liable for alleged Constitutional violations.  As this Court lacks jurisdiction over counts one, two, and three of Plaintiff's complaint, the Court will analyze the merits of this argument as applied to count four only.

Any person who, under color of state law, deprives another person of his or her Constitutional rights is liable for injuries caused by the deprivation.  42 U.S.C. § 1983.  "To state a claim under 42 U.S.C. § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes v. Bank of Am.*, 723 F.3d 399, 405-06 (2d Cir. 2013).  "A private actor may be liable under § 1983 only if there is a sufficiently 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' "  *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Plaintiff's fourth count alleges that the Defendants conspired with a superior court judge to have him falsely arrested for threatening.  [*Id.* at ¶¶20-26]. To the extent that Heinonen alleges that Attorneys Tower or McCarthy acted under color of state law because they engaged in a conspiracy with a Connecticut superior court judge to falsely arrest him, Heinonen has failed to plead facts plausibly suggesting that the judge committed any unconstitutional act and has failed to offer facts sufficient to state a claim for conspiracy such that Tower, McCarthy, or Cramer & Anderson could be liable.

> To state a claim against a private entity on a section 1983
> conspiracy theory, the complaint must allege facts

> demonstrating that the private entity acted in concert with the
> state actor to commit an unconstitutional act. Put differently,
> a private actor acts under color of state law when the private
> actor is a willful participant in joint activity with the State or its
> agents. A merely conclusory allegation that a private entity
> acted in concert with a state actor does not suffice to state a §
> 1983 claim against the private entity.

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (internal quotation

marks and citations omitted).

The Plaintiff has clearly alleged in his complaint that he "called several

media outlets to verify his invitations to witness a summary judgment hearing

scheduled for January 14th, 2013" in state superior court and that, during these

phone calls, he made reference to the Sandy Hook massacre that took the lives of

twenty-six children and educators in Newtown, Connecticut in December 2012,

less than a month prior to his calls. [Dkt. #1, Compl. ¶¶ 20, 21]. Subsequently,

"[a] telephone receptionist from WFSB Channel 3 News responded by calling the

Court and mentioned that the Plaintiff had made a reference to the Sandy Hook

massacre." [*Id.* at ¶ 21]. Plaintiff's complaint further explains that his reference

to this event "was a statement that suggested that the courts should show

consideration and concern to litigate [sic] who suffer with mental illness." [*Id.*].

He alleges that Cramer & Anderson "heard about Plaintiffs [sic] invitation to the

News media and retaliated by concocting bazaar [sic] allegations that Plaintiff

was somehow threatening the court" and so sent State Troopers to his residence.

[*Id.* at ¶ 22]. The Troopers, he asserts, then "questioned Plaintiff about his

conversation with the phone receptionist for Channel 3 News," took his

statement, and "departed assured that the Plaintiff was not threatening and

**18**

allegations that the Defendant made that 'Plaintiff threatened the Court' were without merit."  [*Id.* at ¶ 23].

Although the Plaintiff contends that "Defendants were disappointed with the State Troopers conclusion" and so "had a judge conspire to arrest Plaintiff, based on Defendants [sic] fabricated, nonsense allegation, and held without bond on erroneous 1st Degree Threatening charges," nothing in Plaintiff's allegations ties Cramer & Anderson or its attorneys to his arrest, and the plain facts as relayed by Plaintiff himself demonstrate that the superior court judge who apparently issued a warrant for Plaintiff's arrest on threatening charges committed no Constitutional violations by so doing.  By his own admission, the Plaintiff called local media outlets and explicitly referenced a mass murder that took the lives of twenty-six people barely one month before Plaintiff's call, apparently in a bid to draw public attention to his legal plight and to draw the media to an upcoming public hearing which he would be attending.  While this Court does not doubt that Heinonen's explanation that his reference to Sandy Hook was innocent and only "suggested that the courts should show consideration and concern to litigate [sic] who suffer with mental illness" is true, this reference could nonetheless reasonably have been – and apparently *was* – understood to be an implicit threat that great physical harm would come to those who failed to show consideration to litigants with mental illness such as the Plaintiff.  Based on allegations of the Plaintiff's complaint, the superior court judge did not abuse his or her discretion in finding probable to sign an arrest warrant.

Furthermore, Heinonen's complaint plainly admits that he called various news outlets and referenced the Sandy Hook massacre, at which point a phone receptionist for a media outlet contacted the court.  He also admits that State Troopers questioned him about his conversation with the phone receptionist when they arrived at his residence.  Despite acknowledging that the receptionist called the court after receiving Heinonen's call, and despite that the Troopers specifically questioned Plaintiff about this call to a news outlet, the Plaintiff conclusorily alleges that the reason he was arrested was because Tower and McCarthy heard about Plaintiff's calls to the media, concocted allegations of threatening against him, "sent Connecticut State Police to Plaintiff's residence," and subsequently "had a judge conspire to arrest Plaintiff."  The Plaintiff has offered no evidence connecting the unnamed superior court judge and Attorneys Tower or Anderson.  Rather, his complaint specifically alleges that a representative of the news media contacted the court to report Plaintiff's reference to the Sandy Hook massacre.  Plaintiff's allegations are thus conclusory and are insufficient to state a § 1983 claim against the private Defendants.

Finally, the Court notes that the criminal charges against Heinonen stemming from this incident remain pending in state court.  *See* Docket No. D03D-CR13-0145765-S, *available at* http://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=7db116ac-5f27-43e4-a5ec-2fe62594346b.  "The Connecticut common law tort of false arrest 'is the unlawful restraint by one person of the physical liberty of another.' "

*Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (quoting *Green v. Donroe*, 186 Conn. 265 (1982)).  The Second Circuit has expressly held that favorable termination is an element of a § 1983 claim sounding in false imprisonment or false arrest.  *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011); *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992) ("A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim.").  Even if the Plaintiff has plausibly alleged that Cramer & Anderson or its representatives were acting under color of state law for purposes of his false arrest claim, the Plaintiff has not and cannot allege that these criminal proceedings have terminated in his favor such that a false arrest claim pursuant to § 1983 would be ripe for review.  This Court does not have jurisdiction to hear this claim.

Absent a plausible claim of constitutional injury by the superior court judge or the State Troopers who apparently executed an arrest warrant, Heinonen cannot claim that any role the private defendant law firm took in his arrest (and Plaintiff has failed to plausibly allege that the Defendant firm or attorneys had *any* role) was collusive action under color of state law.  Moreover, Plaintiff's false arrest claim is not ripe for review at this time.  Count four must be DISMISSED.

c. <u>Lack of Diversity Jurisdiction</u>

Cramer & Anderson alternatively moves to dismiss on the ground that this Court lacks jurisdiction over this action because the parties are not diverse and

the Plaintiff has asserted no federal question over which this Court may preside. The Court agrees.

Federal district courts have original diversity jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States.  28 U.S.C. §1332(a)(1).  For a case to be diverse, there must be complete diversity of parties; "[d]iversity is not complete if any plaintiff is a citizen of the same state as any defendant."  *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005).  Here, the Plaintiff avers in his complaint that he is a "longtime (forty-five years) resident of the State of Connecticut."  [Dkt. #1, Compl. ¶ 1].  He alleges that "Defendants (John Tower & Scott McCarthy) are partners of the law firm, Cramer & Anderson, located at 51 Main Street New Milford, CT."  [*Id.* at ¶2].  Thus, as all parties to this action are citizens of the state of Connecticut, no diversity exists and this Court may not exercise jurisdiction based on diversity of the parties.

Federal district courts also have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case arises under federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)).

The Defendant contends that the Plaintiff has failed to allege a cognizable, clear federal question arising under the U.S. Constitution or laws that would confer subject matter jurisdiction on the Court and, even where Plaintiff invokes the U.S. Constitution, has failed to allege any facts that could make his claims cognizable against a non-state actor.  The Court agrees.

Plaintiff's first cause of action alleges that the Defendant sent to him a "fraudulent, harassing and threatening" Notice to Quit Occupancy, that the defendants have wasted the estate and violated a duty to protect and preserve the property, have violated Conn. Gen. Stat. § 45a-139b[2], and have "deceived The Judges of the Appellate Court with slanderous, unfound allegations."  [Dkt. 1, Compl. ¶¶4-6, 11].  Plaintiff's third count appears to allege that the Defendants wasted the Estate and that the property was illegally sold.  No clear federal cause of action is alleged in counts one or three over which this Court has jurisdiction absent diversity of the parties.[3]

Counts two and four contain allegations that the Defendants "ignored the 'Rules of Summary Process'" in the eviction proceeding, and that they conspired to have the Plaintiff falsely arrested and, as a result, "succeeded in disabling him from submitting two 'Briefs' due in the Appellate Court in February 2013."  [Dkt. #1, Compl. ¶¶ 13-14, 20-25].  In his prayer for relief, the Plaintiff alleges that "Defendants [sic] cruel and evil 'execution of eviction' defies the 14[th] Amendment

---

[2] The Court notes that Conn. Gen. Stat. § 45a-139b does not exist.  Section 45a-139 deals with probate bonds and waivers.
[3] As previously discussed, these claims are also barred by the Rooker-Feldman doctrine.

of The Constitution."  [Compl., page 7 ¶ 2].  To the extent that the Plaintiff is alleging a due process claim pursuant to the Fourteenth Amendment, or a false arrest claim pursuant to the Fourth Amendment, the Plaintiff has not included any allegation against Cramer & Anderson or its attorneys that would allow the Court to conclude that the Defendant(s) is (or are) state actors such that this Court could hear such constitutional tort claims against them.  As discussed previously, Heinonen has failed to plausibly allege a conspiracy between the judge and the private attorneys pursuant to § 1983 in count four, and has failed to allege action by which the Court can reasonably infer that the Defendant was acting under color of state law in his remaining three counts.  Further, any Constitutional due process violation alleged in count two is barred by the Rooker-Feldman doctrine, as count two requires this Court to analyze prior state court decisions.  Thus, the Plaintiff has failed to plausibly allege that this case involves a question of federal law over which this Court has jurisdiction.

The Federal Rules of Civil Procedure dictate that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  *See also Lovejoy v. Watson*, 475 F. App'x 792 (2d Cir. 2012) ("Where jurisdiction is lacking, ... dismissal is mandatory.") (citation omitted).  Because the Plaintiff has not pled diversity of citizenship and his complaint lacks any articulable claims based on the Constitution or federal laws,

this Court lacks subject matter jurisdiction over this case and it must be dismissed.[4]

### d. Plaintiff's Request to Supplement the Complaint

The last page of Plaintiff's opposition to the Defendant's motion to dismiss contains a "Request for Judicial Notice," which requests that the Court "review the attached, 'related case' complaint" which relates to the Plaintiff's allegations of conspiracy. It also notes that the Plaintiff "intends to amend his complaint to include several other Defendants," including those named in the superior court action of which Plaintiff would like the Court to take notice, "the Real Estate Agency, the Bank, the Insurance Agency, the Executor of the Estate and his attorney, the non-blood relative, non-party to the Estate responsible for financing the Defendants [sic] actions." [Dkt. #23, p. 3]. The Plaintiff did not attach anything to this opposition. However, Heinonen had previously filed a Motion to Supplement his Complaint. The case caption on Plaintiff's motion to supplement lists the case as one filed in Danbury Superior Court, No. DBDcv125009110, against "Jepson, George (CT State Police)" on July 29, 2013. [Dkt. #22, p. 1]. The Court assumes that the request for judicial notice articulated in Plaintiff's opposition to the motion to dismiss pertains to the superior court case filed as a motion to supplement his complaint, and that the Plaintiff would like to

---

[4] The Defendant also argues that the Plaintiff's complaint is vague and conclusory and thus fails to comply with Fed. R. Civ. P. 8, and that Plaintiff's first, second, and third causes of action must be dismissed on the basis of res judicata because Heinonen has already litigated these claims in prior state court proceedings. Given the various other reasons for dismissal of this complaint, the Court declines to address these arguments.

supplement his complaint to include the allegations and the defendants in the state court action.  The Defendants object both to Plaintiff's motion to supplement and his request for judicial notice.

In his motion to supplement, which appears to be the text of a filing on the superior court docket noted above, Heinonen "brings mention to the Court that a complaint for false arrest was filed October 22, 2012.  Defendant never answered Plaintiffs [sic] Complain [sic] and entered an erroneous, out of order 'Motion to Strike', five months later on March 1st, 2013."  [*Id.*].  He claims that "all of the States allegations and arrest are plainly retaliatory response to Plaintiffs [sic] Civil Actions brought upon them."  [*Id.*].  The motion then proceeds to reiterate the circumstances surrounding the Plaintiff's arrest on January 11, 2013 for threatening and alleges that the arrest was the result of a conspiracy involving the State Police, John Tower, State Prosecutor Stephan Sedenski, and Superior Court Judge Blowie.  [*Id.*].

A review of the Connecticut Judicial Branch's website reveals that the case of which Heinonen requests that this Court take notice was filed on October 22, 2012, before the filing of this federal action, against Attorney General George Jepson and Connecticut State Police Trooper Robert Burke.  *See* http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=DBDCV 125009110S.  On August 13, 2013, after the present action was filed, the superior court granted the defendants' motion to strike Heinonen's complaint, which contained a false arrest claim, in its entirety.  [DBD-CV12-5009110-S, Dkt. no. 103.25, 8/15/13].

26

To the extent that Plaintiff is requesting leave to amend his complaint as to his allegations of false arrest, the motion is DENIED.  To the extent that Plaintiff requests leave to add defendants to this federal action, the motion is DENIED. Pursuant to the Federal Rules of Civil Procedure, a party may amend a pleading at this juncture "only with the opposing party's written consent or with the court's leave," which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  A court should deny leave to amend only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (same). "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).  A proposed amendment is also futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Dougherty*, 282 F.3d at 88.  *See also Basile v. Connolly*, 13-339-CV, --- F. App'x ---, 2013 WL 4711473, at *2 (2d Cir. Sept. 3, 2013) ("while a district court generally should not dismiss a pro se complaint without granting the plaintiff leave to amend, such leave is not necessary when it would be futile.").

As discussed previously, the criminal charges brought against Plaintiff in connection with his January 11, 2013 arrest are still pending and the Plaintiff has not received a favorable determination of the charges such that his false arrest claim is ripe for adjudication.  The addition of defendants related to this claim is improper for the same reason.  Furthermore, the addition of probate and/or superior court judges and other private parties involved in the eviction of the Plaintiff and his children as defendants in this action is barred by this Court's lack of jurisdiction to hear probate matters and barred by the Rooker-Feldman doctrine, as the Connecticut Appellate Court has twice held that the Plaintiff's eviction from and sale of property owned by the Estate of his deceased mother was legal and proper.[5]  Moreover, superior and probate court judges are immune from suit for judicial acts in proceedings within the judge's jurisdiction.  *Stump v. Sparkman*, 435 U.S. 349, 356–62 (1978); *Owens v. State of N.Y. Attorney Gen.*, 10 F. App'x 34, 35 (2d Cir. 2001) (amendment is futile if proposed defendants would be immune from suit for their conduct).  As the Plaintiff is unable to cure the jurisdictional deficiencies of his original complaint by amendment, amendment is futile.  Plaintiff's motion to amend and/or supplement his complaint is DENIED.

## V.   Conclusion

---

[5] The Court notes that, in his reply to the Defendant's objection to his request to amend, Plaintiff *again* clearly asks this Court to review the judgments of the state courts that have previously heard his eviction and sale of property claims. "Plaintiff asks this Court to recognize what time has clearly proven: Plaintiff and His Children were illegally evicted from their Homestead see section 120a 139b without cause. . . . Defendants – without cause – illegally sold Plaintiffs [sic] property and have continued to misappropriate the proceeds from their dirty deal." [Dkt. #27, P's Response, p. 2].

For the foregoing reasons, Defendants' [Dkt. #15] Motion to Dismiss the Plaintiff's complaint is GRANTED.  Plaintiff's Motion to Supplement his complaint is DENIED.  The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 20, 2013